UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANTONIO LAY #449238,

        Plaintiff,                               Hon. Robert J. Jonker

v.                                                  Case No. 1:24-cv-615

CHARLES WOLTHUIS,

        Defendant.
_____/

**REPORT AND RECOMMENDATION**

      Plaintiff Antonio Lay, a prisoner currently incarcerated with the Michigan Department of Corrections (MDOC) at Baraga Maximum Correctional Facility, has sued former MDOC Corrections Officer (CO) Charles Wolthuis pursuant to 42 U.S.C. § 1983, alleging that Wolthuis physically and sexually assaulted Lay in his cell in 2022 at the Richard A. Handlon Correctional Facility (MTU).

      Presently before me is Defendant Wolthuis's Motion for Summary Judgment. (ECF No. 23.) Lay has failed to respond to the motion within the time permitted by Western District of Michigan Local Civil Rule 7.2(c). Pursuant to 28 U.S.C. § 636(b)(1)(B), I recommend that the motion be **granted** and that Lay's Section 1983 claim be **dismissed with prejudice.** To the extent Lay alleges a state-law claim, I recommend that the Court dismiss it without prejudice pursuant to 28 U.S.C. § 1367(c)(3).

## I. Background

### A. Lay's Allegations

Lay alleges that on July 24, 2022, he returned to his cell at MTU after showering and, before he could get dressed, Wolthuis unlocked the cell door and kicked it open.[1] Lay alleges that he turned slightly and said, "What are you doing, don't you see I'm naked?" (ECF No. 1 at PageID.7.) Defendant Wolthuis stated that he did not give a "fuck" and ordered Lay to step out of the cell. (*Id.*) Lay attempted to put some clothes on, and Wolthuis said, "You have a nice rump." (*Id.*) Lay replied, "You['re] a fag." (*Id.*) Wolthuis stepped into the cell and grabbed Lay's butt. Lay turned away, swiping Wolthuis' hand away. Wolthuis then rushed into the cell and grabbed Lay's private area and began assaulting Plaintiff by grabbing his neck and punching Lay in the jaw. (*Id.*)

### B. Summary Judgment Evidence

On July 24, 2022, Lay was confined in cell B-109 at MTU. (ECF No. 24-3 at PageID.70.) Lay testified at his deposition that, at the time of the incident, he had just returned to his cell from the shower when Defendant Wolthuis opened his cell door while he was not dressed. Lay asked Wolthuis what he was doing, and Wolthuis responded, "Get dressed and step out." (*Id.* at PageID.71–73.) Lay responded, "Don't you see I'm naked?" to which Wolthuis replied, "I don't give a fuck. Get dressed and step out." (*Id.* at PageID.73.) Lay claims that after Wolthuis ordered him to step out of the cell a third time, Wolthuis commented, "nice rump," and Lay responded by calling Wolthuis a "fag." (*Id.* at PageID.73–74.) Lay claims that, when Wolthuis stepped into his

---

[1] Lay's complaint is not verified or sworn to under oath pursuant to 28 U.S.C. § 1746, and is therefore not properly considered on a motion for summary judgment. *See Bickham v. Loman*, No. 2:22-cv-182, 2025 WL 791433, at *2 (W.D. Mich. Feb. 11, 2025), *report and recommendation adopted*, 2025 WL 786059 (Mar. 12, 2025) (noting that "complaints that are unverified are not considered Rule 56 evidence").

2

cell, Wolthuis's hand brushed up against his buttocks, and Lay swiped it away, after which "the tussle ensued." Lay claims that Wolthuis then grabbed him by the throat and "threw the first punch." (*Id.* at PageID.74.) After the struggle, Lay exited his cell and walked down the aisle. Another officer arrived and handcuffed him. (*Id.* at PageID.75.) Two officers then escorted him to the segregation unit. (*Id.* at PageID.76.) Lay did not sustain any physical injuries. (ECF No. 1 at PageID.8.)

Defendant Wolthuis claims that, while he was working at MTU on July 24, 2022, he approached Lay's cell to conduct a search and had a plastic bag in his hand. Wolthuis looked inside the cell and suspected that Lay had homemade alcohol, as he could smell the fermentation. (ECF No. 24-5 at PageID.87.) In fact, Lay concedes that he possessed alcohol, or "spud juice," in his cell at the time. (ECF No. 24-3 at PageID.74.) When Wolthuis opened the cell door and told Lay to step out, he saw Lay take a garbage bag containing an orange liquid out of a green duffle bag. Lay told Wolthuis that he was going to dump the bag out. (*Id.*) Wolthuis then gave Lay a direct order to give him the bag, but Lay did not comply and told Wolthuis to come in and get the bag. (*Id.*) At approximately 2:41:15 p.m., Wolthuis reached into the cell to retrieve the suspected alcohol. As Wolthuis grabbed the bag containing the suspected alcohol, Lay hit him in the face with a closed fist and pulled him into the cell. Lay continued to punch Wolthuis inside the cell. Wolthuis defended himself by punching back. (*Id.*) Ultimately, Wolthuis was able to radio for assistance. Once Wolthuis did so, Lay ceased punching him and walked out of the cell. Wolthuis exited the cell at approximately 2:43:00 p.m. and pointed Lay out to responding officers. (*Id.*) Following the altercation, Wolthuis went to the emergency room for treatment of a laceration to his right eye. (*Id.* at PageID.88.) He did not return to work until September 8, 2022, because he

suffered a concussion because of the incident. Wolthuis denies making any sexually inappropriate remarks to Lay. (*Id.*)

In support of his motion, Defendant Wolthuis has submitted surveillance video from two camera angles, one looking down the cell block towards Lay's cell and the other looking in the other direction away from the cell. The video does not show inside the cell but does show the activity outside of the cell. Wolthuis first approaches the cell with a bag in his hand and then opens the door, appearing to tell Lay to step out of his cell. After waiting for several seconds, Wolthuis appears to give Lay another command to exit the cell, and then several seconds later, he enters the cell with the bag in his hand. About eight seconds after entering, Wolthuis appears to retreat out of the cell in a defensive manner, and then reenters the cell. After about 90 seconds, Lay exits his cell wearing shorts and no shirt and begins walking down the aisle in the direction of the camera. Wolthuis then exits the cell, visibly shaken, while Lay continues walking to the end of the aisle and turns around to be handcuffed by two officers.

Lay received two major misconducts that same day, one for substance abuse and the other for assault resulting in serious physical injury of a staff victim. (ECF Nos. 24-7 and 24-8.) Lay pled guilty to the substance abuse charge. (ECF No. 24-7 at PageID.95.) On August 26, 2022, a hearing officer held a hearing on the assault misconduct charge, during which Lay pled not guilty. (ECF No. 24-8 at PageID.98.) After allowing Lay to present his version of events, the hearing officer found that Lay, intentionally and in anger, attacked Wolthuis with a closed fist multiple times and that the contact was non-consensual and not mutual. After considering the evidence, including the video, the hearing officer found Lay's claim that Wolthuis attacked him first not credible. (*Id.* at PageID.98.) The hearing officer found that Wolthuis did not go into Lay's cell to attack Lay because, "logically [he] would have set the bag down or thrown it down if he was going

4

into the cell to attack prisoner Lay." (*Id.* at PageID.99.) The hearing officer further found that Wolthuis would not have backed up out of the cell in an attempt to retreat if he was on the offensive. (*Id.*) Finally, the hearing officer concluded that if Wolthuis intended to attack Lay, Lay would have had more than just "scratches." The officer noted that the video showed Lay walking out of the cell first, indicating that he was likely in control of the situation, while Wolthuis emerged second, bleeding and with a towel to his head, while Lay had no visible injuries. (*Id.*) Thus, the hearing officer found Lay guilty of assault.

## II. Summary Judgment Standard

Summary judgment is appropriate if there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Material facts are facts that are defined by substantive law and are necessary to apply the law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine if a reasonable jury could return judgment for the non-moving party. *Id.*

The court must draw all inferences in a light most favorable to the non-moving party but may grant summary judgment when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Agristor Fin. Corp. v. Van Sickle*, 967 F.2d 233, 236 (6th Cir. 1992) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

Generally, where the non-moving party fails to respond to a motion for summary judgment, "the district court must, at a minimum, examine the moving party's motion for summary judgment to ensure that it has discharged its initial burden." *Miller v. Shore Fin. Servs., Inc.*, 141 F. App'x 417, 419 (6th Cir. 2005) (citing *Stough v. Mayville Cmty. Sch.*, 138 F.3d 612, 614 (6th Cir. 1998)).

### III. Discussion

    A.    **Section 1983 Claim**

Lay alleges that Wolthuis violated his Eighth Amendment rights by physically and sexually assaulting him. Wolthuis contends that Lay's claim that Wolthuis physical and sexually assaulted him fails because the hearing officer's finding that Lay was the aggressor and was guilty of assault is entitled to preclusive effect.[2] (ECF No. 24 at PageID.48.)

In *Peterson v. Johnson*, 714 F.3d 905 (6th Cir. 2013), the Sixth Circuit considered whether a hearing officer's factual finding that the plaintiff grabbed the defendant's hand should be given preclusive effect on the plaintiff's Eighth Amendment claim. In resolving the question, the court looked to *University of Tennessee v. Elliott*, 478 U.S. 788 (1986), which explained that "when a state agency acting in a judicial capacity resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate, federal courts must give the agency's factfinding the same preclusive effect to which it would be entitled in the State's courts." 478 U.S. at 799 (citation, internal quotation marks, and edits omitted). The *Elliott* Court identified four criteria for according preclusive effect: (1) whether the state agency acted in a judicial capacity; (2) whether the hearing officer resolved a disputed fact that was properly before her; (3) whether the party to be precluded had an adequate opportunity to litigate the factual dispute; and (4) if the other three criteria are satisfied, the finding is given the same preclusive effect as it would be given in state courts. *Peterson*, 714 F.3d at 912-13. After applying the four *Elliott* criteria to the MDOC's

---

[2] Wolthuis also argues that *Heck v. Humphrey*, 512 U.S. 477 (1994), bars Lay's claim because Lay's success on his claim would call into question the guilty finding on the assault misconduct. (ECF No. 24 at PageID.46–48.) However, Wolthuis cites no authority for the proposition that *Heck* applies to a misconduct ticket conviction. *See Muhammad v. Close*, 540 U.S. 749, 751 n.1 (2004) ("The assumption is that the incarceration that matters under *Heck* is the incarceration ordered by the original judgment of conviction, not special disciplinary confinement for infraction of prison rules.").

major misconduct hearing process, the Sixth Circuit concluded that Michigan courts would grant preclusive effect to the hearing officer's finding. *Peterson*, 714 F.3d at 917.

The Sixth Circuit revisited the issue a year later in *Roberson v. Torres*, 770 F.3d 398 (6th Cir. 2014), another case alleging excessive use of force. The court limited its holding in *Peterson*, noting that the question of preclusion had to be decided on a case-by-case basis. The court observed:

> To the extent that Torres argues that, in light of *Peterson*, any factual findings by a hearing officer in a major-misconduct hearing in a Michigan prison are to be accorded preclusive effect, we reject such a reading of *Peterson* as overbroad. *Peterson* is not a blanket blessing on every factual finding in a major-misconduct hearing. Although the language of our opinion in *Peterson* is at times categorical, our decision to accord preclusive effect to particular findings from Peterson's prison hearing necessarily turned, at least in part, on the particular circumstances of Peterson's case. Indeed, the question of preclusion cannot be resolved categorically, as it turns on case-specific factual questions such as what issues were actually litigated and decided, and whether the party to be precluded had sufficient incentives to litigate those issues and a full and fair opportunity to do so—not just in theory, but in practice. *Id.* at 916–17. It likewise turns on the court's "sense of justice and equity," *Blonder–Tongue Labs. v. Univ. of Ill. Found.*, 402 U.S. 313, 334, 91 S. Ct. 1434, 28 L. Ed. 2d 788 (1971), which may require a case-by-case analysis of surrounding circumstances.

*Id.* at 404–05. The court also found that the record had not been sufficiently developed for it to resolve the preclusion issue on appeal. Consequently, it remanded the case for consideration of the preclusion argument, directing the district court to give particular attention to the fairness and accuracy of the hearing officer's factual findings. *Id.* at 405. The court further identified pertinent inquiries, "including why the hearing officer refused to review the alleged video of the incident, whether the hearing officer provided a sufficient and reasonable basis for her factual findings, and whether the testimony of other witnesses corroborated the accounts provided by either Roberson or Torres." *Id.*

The evidentiary record in this case provides ample support for giving the hearing officer's finding preclusive effect. That is, the hearing officer, Administrative Law Judge (ALJ) Morris,

7

acted in a judicial capacity. ALJ Morris conducted a full hearing, at which he considered all of the evidence, including the misconduct report, the hearing investigation report, Lay's statement, and the surveillance video. (ECF No. 24-8 at PageID.98.) Next, ALJ Morris resolved the disputed issue of fact before him—whether Lay attacked Wolthuis—and afforded Lay an adequate opportunity to present his version of events, including his view of what the video showed. After considering the evidence, ALJ Morris fully explained why he found the misconduct report credible and Lay's version not credible. (*Id.* at PageID.98–99.) Because the first three requirements are satisfied, ALJ Morris's decision is entitled to preclusive effect because Michigan courts would give it preclusive effect under the present circumstances. *Peterson*, 714 F.3d at 914–17.

Accordingly, the misconduct hearing findings preclude Lay's Eighth Amendment claim against Wolthuis. Summary judgment on Lay's Section 1983 claim is thus proper.[3]

### B. State-Law Claims

Lay appears to assert a state-law claim for assault. To the extent the Court agrees, I recommend that the Court decline to exercise supplemental jurisdiction over the claim and dismiss it without prejudice pursuant to 28 U.S.C. § 1367(c)(3). Ordinarily, where a district court has exercised jurisdiction over a state law claim solely by virtue of supplemental jurisdiction, and the federal claims are dismissed prior to trial, the court will dismiss the remaining state law claims. *See Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 521 (6th Cir. 2007) ("Generally, once a federal court has dismissed a plaintiff's federal law claim, it should not reach state law claims." (citing *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966))); *Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993). In determining whether to retain

---

[3] Having concluded that Lay cannot assert an Eighth Amendment claim, I find no need to address Defendant Wolthuis's qualified immunity or 42 U.S.C. § 1997e(e) arguments.

supplemental jurisdiction, "[a] district court should consider the interests of judicial economy and the avoidance of multiplicity of litigation and balance those interests against needlessly deciding state law issues." *Landefeld*, 994 F.2d at 1182; *see also Moon v. Harrison Piping Supply*, 465 F.3d 719, 728 (6th Cir. 2006) ("Residual jurisdiction should be exercised only in cases where the interests of judicial economy and the avoidance of multiplicity of litigation outweigh our concern over needlessly deciding state law issues." (internal quotations omitted)). Dismissal, however, remains "purely discretionary." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) (citing 28 U.S.C. § 1367(c)).

Here, because the balance of the relevant considerations weighs against the continued exercise of supplemental jurisdiction, I recommend that Plaintiff's state-law claim be dismissed without prejudice.

## IV. Conclusion

For the reasons set forth above, I recommend that the Court **GRANT** Defendant's motion for summary judgment (ECF No. 23), **dismiss** Lay's Section 1983 claim **with prejudice**, and **dismiss** the state-law claim **without prejudice**.

Dated: July 29, 2025                     /s/ Sally J. Berens
                                         SALLY J. BERENS
                                         U.S. Magistrate Judge

### NOTICE

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within 14 days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).